**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

LORENZO ROUNDTREE,

    Movant,

vs.

UNITED STATES OF AMERICA.

No. C09-0102-LRR
No. CR06-0107-LRR

ORDER

## I. INTRODUCTION

This case arises under 28 U.S.C. § 2255. For the instant matter, the court directed the parties to brief the issue that the Eighth Circuit Court of Appeals remanded for further consideration. Specifically, it directed the parties to consider the Supreme Court's January 27, 2014 decision in *Burrage v. United States*, 571 U.S. ___, ___, 134 S. Ct. 881, 892 (2014), that is, the rule that "a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless [the victim's] use [of drugs distributed by the defendant] is a but-for cause of the death or injury." Further, the court directed the parties to brief: (1) whether a substantive challenge based on *Burrage* faces any "significant procedural hurdles to its consideration on the merits," *Bousley v. United States*, 523 U.S. 614, 621-22 (1998), and (2) whether *Burrage* is retroactively applicable in this case. *See* July 21, 2015 Order (civil docket no 76).

As directed by the court, Lorenzo Roundtree ("the movant") filed a brief (civil docket no. 79) on August 11, 2015, and the government filed a responsive brief (civil docket no. 81) on September 3, 2015. Additionally, the movant filed a pro se supplemental brief (civil docket no. 98) on May 9, 2016 and a second pro se supplemental

brief (civil docket no. 101) on May 20, 2016.[1] For the following reasons, the court finds that relief under 28 U.S.C. § 2255 is not available to the movant but concludes that a certificate of appealability should issue.

## II. RELEVANT BACKGROUND

On August 15, 2006, a grand jury charged the movant with one count of distributing heroin resulting in the death of another person after having previously been convicted of a felony drug offense in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C) and 21 U.S.C. § 851. The case proceeded to trial. On March 20, 2007, the jury found the movant guilty, that is, it found beyond a reasonable doubt that the movant distributed heroin and that Craig Handy died as a result of using the heroin that the movant distributed. A probation officer prepared a pre-sentence investigation report, and the court held a sentencing hearing on July 2, 2007. The court sentenced the movant to life imprisonment, that is, the mandatory term under 21 U.S.C. § 841(b)(1)(C).

After the court entered judgment, the movant appealed to the Eighth Circuit Court of Appeals. The movant raised four issues: (1) the court erred when admitting evidence of his prior conviction; (2) the government improperly vouched for its witnesses; (3) the government failed to provide notice of a sentencing enhancement pursuant to 21 U.S.C. § 851; and (4) the sentencing enhancement was based on an inaccurate prior felony. On July 24, 2008, the Eighth Circuit Court of Appeals affirmed the movant's conviction and sentence. *See United States v. Roundtree*, 534 F.3d 876 (8th Cir. 2008). The movant sought rehearing, which the Eighth Circuit Court of Appeals denied on September 17, 2008. The movant did not seek a writ of certiorari.

On July 27, 2009, the movant filed his original motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. In his motion, the movant raised a number of grounds, including that trial counsel provided ineffective assistance when he failed to

---

[1] The court notes that the pro se supplemental briefs are identical, except the second pro se supplemental brief is signed.

seek a cause of death jury instruction. On August 16, 2012, the court found that the movant's claims did not entitle him to relief, denied a certificate of appealability and entered judgment in favor of the government.

The movant appealed. On February 5, 2013, the Eighth Circuit Court of Appeals granted a certificate of appealability on the issue of trial counsel's failure to advise the movant of the mandatory life sentence potential, and, on October 4, 2013, the Eighth Circuit granted a certificate of appealability on the issue of whether an evidentiary hearing was required. On May 30, 2014, the Eighth Circuit Court of Appeals considered the movant's claim that trial counsel provided ineffective assistance by failing to advise him of the mandatory nature of the life sentence and instructed the court to hold an evidentiary hearing to determine whether trial counsel advised the movant that 21 U.S.C. § 841(b)(1)(C) mandated a life sentence in the movant's circumstances and, if not, whether the movant was prejudiced as a result of the omission. *See Roundtree v. United States*, 751 F.3d 923 (8th Cir. 2014). On the same date, judgment of the Eighth Circuit Court of Appeals entered.

On July 10, 2014, the movant filed a petition for rehearing by the panel. In such petition, the movant asked the Eighth Circuit Court of Appeals to expand the certificate of appealability in light of *Burrage*, 571 U.S. at ___, 134 S. Ct. at 881, and *Ragland v. United States*, 756 F.3d 597 (8th Cir. 2014). On August 15, 2014, the Eighth Circuit Court of Appeals denied the movant's petition for rehearing by the panel. On August 26, 2014, mandate issued.

On August 28, 2014, the court followed the Eighth Circuit Court of Appeals' directive by setting an evidentiary hearing. Before the evidentiary hearing, the movant sought to expand the evidentiary hearing in an effort to have the court address the impact of *Burrage*, that is, whether the movant received an unlawful sentence because the jury did not find that the movant's distribution of heroin or Craig Handy's use of heroin supplied by the movant was the but-for cause of Craig Handy's death. When doing so, the movant

argued that the evidence established that he did not give or sell the heroin to Craig Handy and that an intervening person gave or sold Craig Handy the heroin that led to his death. The government resisted the movant's request to expand the evidentiary hearing, maintaining that the evidence showed that: (1) Craig Handy had alcohol and heroin in his body; (2) Craig Handy's blood alcohol level would not have caused his death; and (3) the heroin in Craig Handy's body by itself could have caused Craig Handy's death. It also emphasized that the jury determined that the heroin that the movant distributed caused Craig Handy to die, the movant did not previously challenge the jury instructions or the burden of proof regarding cause of death, the movant never alleged that the heroin he distributed was not the but-for cause of Craig Handy's death and no legal authority supports the contention that an intervening distributor factors into the but-for causality analysis under *Burrage*. On September 25, 2014, the court denied the movant's request to expand the scope of the evidentiary hearing. On October 2, 2014, the court held an evidentiary hearing on the remanded claim. After finding the movant's assertion that trial counsel provided ineffective assistance by failing to advise him of the mandatory nature of the life sentence that he faced if the jury convicted him of the charge included in the indictment to be without merit and denying a certificate of appealability, the court directed the clerk's office to enter judgment in favor of the government, which it did on October 3, 2014.

The movant appealed. On April 22, 2015, the Eighth Circuit Court of Appeals denied the movant's application for a certificate of appealability on his ineffective assistance of counsel claim and granted the movant's application for a certificate of appealability on his *Burrage* claim. It also summarily remanded the case so that the court could consider the movant's *Burrage* claim.

### III. STANDARDS

A prisoner in custody under sentence of a federal court is able to move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To

4

obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "[that the judgment or sentence] is otherwise subject to collateral attack." *Id.*; *see also Hill v. United States*, 368 U.S. 424, 426-27 (1962) (listing four grounds upon which relief under 28 U.S.C. § 2255 may be claimed); *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (same); *Lee v. United States*, 501 F.2d 494, 499-500 (8th Cir. 1974) (clarifying that subject matter jurisdiction exists over enumerated grounds within the statute); Rule 1 of the Rules Governing Section 2255 Proceedings (specifying scope of 28 U.S.C. § 2255). If any one of the four grounds is established, the court is required "to vacate and set aside the judgment and [it is required to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting 28 U.S.C. § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)) (internal quotation mark omitted). Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Rather, 28 U.S.C. § 2255 is intended to redress constitutional and jurisdictional errors and, apart from those errors, only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also Sun Bear*, 644 F.3d at 704 (clarifying that the scope of 28 U.S.C. § 2255 is severely limited and quoting *Hill*, 368 U.S. at 428); *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a

5

complete miscarriage of justice." (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987))). A collateral challenge under 28 U.S.C. § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) (making clear that a motion pursuant to 28 U.S.C. § 2255 will not be allowed to do service for an appeal). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (quoting *Addonizio*, 442 U.S. at 184).

Further, in collateral proceedings based on 28 U.S.C. § 2255, movants ordinarily are precluded from asserting claims that they failed to raise on direct appeal. *See McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001); *see also Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam) (citing *Frady*, 456 U.S. at 167-68, for the proposition that a movant is not able to rely on 28 U.S.C. § 2255 to correct errors that could have been raised at trial or on direct appeal); *United States v. Samuelson*, 722 F.2d 425, 427 (8th Cir. 1983) (concluding that a collateral proceeding is not a substitute for a direct appeal and refusing to consider matters that could have been raised on direct appeal). "A [movant] who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a [28 U.S.C. §] 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *McNeal*, 249 F.3d at 749 (citing *Bousley*, 523 U.S. at 622); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the [movant] shows cause and prejudice."). "'[C]ause' under the cause and prejudice test must be something *external* to the [movant], something that cannot fairly be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). "Prejudice" that is necessary to excuse procedural default means that the alleged error worked to the movant's actual and substantial disadvantage. *See Frady*, 456 U.S. at 170; *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002); *Swedzinski v. United States*, 160 F.3d 498, 501 (8th Cir. 1998). If a movant fails to show cause, a court need

not consider whether actual prejudice exists. *See McCleskey v. Zant*, 499 U.S. 467, 502 (1991). Actual innocence under the actual innocence test "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623; *see also Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992) (equating fundamental miscarriage of justice with factual innocence); *McNeal*, 249 F.3d at 749 ("[A movant] must show factual innocence, not simply legal insufficiency of evidence to support a conviction."). To establish actual innocence, a movant "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (citation omitted) (internal quotation marks omitted); *see also Sawyer*, 505 U.S. at 339 (clarifying that a fundamental miscarriage of justice can be demonstrated by "establish[ing] that under the probative evidence [the movant] has a colorable claim of factual innocence").[2]

Lastly, "not all constitutional violations amount to reversible error." *Satterwhite v. Texas*, 486 U.S. 249, 256 (1988). Reversal is required where a "structural defect affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). So far, an error has been found to be structural only in cases where there is a complete denial of counsel, a biased trial judge, an unlawful exclusion of grand jurors based on race, a denial of self-representation at trial, a denial of a public trial or a defective reasonable doubt jury instruction. *See Johnson v. United States*, 520 U.S. 461, 468-69 (1997) (collecting cases); *see also United States v. Marcus*, 560 U.S. 258, 262-63 (2010) (reaffirming that structural error has been found only in a very limited class of cases). On the other hand, if no structural constitutional error occurred and "the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors

---

[2] The procedural default rule applies to a conviction obtained through trial or through the entry of a guilty plea. *See, e.g.*, *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997); *Thomas v. United States*, 112 F.3d 365, 366 (8th Cir. 1997); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).

that may have occurred are subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579 (1986); *accord Fulminante*, 499 U.S. at 306-07 (reiterating that constitutional errors that are not structural defects are subject to a harmless error review). In that situation, the test is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) (stating that errors determined to be "'harmless' in terms of their effect on the factfinding process at trial" are excused under *Chapman*); *United States v. Barnhart*, 979 F.2d 647, 652 (8th Cir. 1992) (observing that a conviction will not be overturned if an error is deemed to be harmless beyond a reasonable doubt).[3]

---

[3] It is unclear what harmless error review standard applies in proceedings under 28 U.S.C. § 2255. The court must either be able to declare a belief that the error was harmless beyond a reasonable doubt, *see Chapman*, 386 U.S. at 24, or be able to decide that the error "had substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). In the 28 U.S.C. § 2254 context, it is clear that the less onerous standard applies. *See Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (holding that the "substantial and injurious effect" standard set forth in *Brecht* applies in proceedings under 28 U.S.C. § 2254). But, the Supreme Court has not directly decided whether that same standard applies in proceedings under 28 U.S.C. § 2255. *Cf. id.*; *Frady*, 456 U.S. at 164-66 (holding that the "plain error" standard is out of place when a prisoner collaterally attacks a criminal conviction under 28 U.S.C. § 2255). Most circuit courts of appeals, however, have held that the *Brecht* harmless error standard applies when a conviction is collaterally attacked under 28 U.S.C. § 2255. *See United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013) (citing *United States v. Dago*, 441 F.3d 1238, 1245-46 (10th Cir. 2006); *United States v. Montalvo*, 331 F.3d 1052, 1057-58 (9th Cir. 2003); *Ross v. United States*, 289 F.3d 677, 682 (11th Cir. 2002); and *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000)); *United States v. Clay*, 720 F.3d 1021, 1027 n.5 (8th Cir. 2013) (citing *Dago*, 441 F.3d at 1246); *see also Peck v. United States*, 106 F.3d 450, 454 (2d Cir. 1997) (observing that a court must determine whether the constitutional error substantially influenced the jury's decision). Other circuit courts of appeals assume that the more demanding standard applies. *See, e.g.*, *Herrin v. United States*, 349 F.3d 544, 548-49 (8th Cir. 2003) (Riley, J., concurring) (concluding that a prosecutor's improper

(continued…)

## IV. REVIEW OF REMANDED ISSUE

### A. Parties' Arguments

A review of the parties' briefs indicates that they agree that *Burrage* is retroactively applicable on collateral review. The parties, however, dispute whether the movant is entitled to relief. Specifically, they take different positions regarding whether cause and prejudice or actual innocence can be demonstrated, and they advance opposing views concerning whether the evidence is sufficient to establish that Craig Handy would have lived but-for his heroin intake.

### 1. The movant

The movant argues that he is not procedurally barred from obtaining relief because he raised the *Burrage* issue in his first 2255 appeal. Aside from arguing that he did not waive the issue and tried to raise the issue through all available avenues, the movant addresses whether there was sufficient evidence for the jury to conclude that Craig Handy would not have died in the absence of the heroin that he provided to Nick Howe and Michelle Eash. He argues that the heroin that Craig Handy used before he died came from Wes Gridley, who obtained it from Nick Howe and Michelle Eash, and there is no way to know whether Nick Howe, Michelle Eash or Wes Gridley had additional drugs that they provided Craig Handy, whether he had any reason to believe that the heroin he provided to Nick Howe and Michelle Eash was going to be provided to Craig Handy or whether Craig Handy would have died but-for the heroin that he provided to Nick Howe and Michelle Eash. He maintains that significant evidence demonstrates that intervening factors caused Craig Handy to die and a sufficient opportunity to present evidence demonstrating that the heroin he distributed was not the but-for cause of Craig Handy's

---

³(…continued)
remarks were harmless beyond a reasonable doubt); *Monsanto v. United States*, 348 F.3d 345, 349 (2d Cir. 2003) (finding no reversible error in the district court's application of *Chapman*); *Santana-Madera v. United States*, 260 F.3d 133, 140 (2d Cir. 2001) (finding error to be harmless under either standard).

death did not exist because the government only needed to prove that the heroin he distributed contributed to Craig Handy's death.

Additionally, in his pro se supplemental brief, the movant asks to amend his motion to vacate, set aside or correct sentence to include a claim based on *Burrage*. He contends that the court should freely give leave to amend when justice so requires and states that he should be allowed to amend his prior assertion that trial counsel failed to properly assert that the evidence did not support a finding by the jury that his distribution of heroin contributed to Craig Handy's death. He maintains that his *Burrage* claim sufficiently relates back to his original claim, and, as a reason for failing to assert *Burrage* as an issue earlier, he asserts that appointed counsel overlooked the issue. After explaining why he believes the court should consider the merits of a claim based on *Burrage*, the movant makes several assertions based on his view of what the evidence establishes. The movant states that the jury could have concluded that: (1) Nick Howe and Michelle Eash purchased heroin from someone else; (2) Nick Howe and Michelle Eash had heroin before they purchased heroin from him; (3) Nick Howe, Michelle Eash and Wes Gridley used all of the heroin that they purchased from him before they picked up Craig Handy from the bar and returned to the home of Wes Gridley's mother; (4) Wes Gridley had his own heroin; (5) Craig Handy had his own heroin; (6) Wes Gridley never shared any of the heroin that Nick Howe and Michelle Eash gave him; (7) Wes Gridley gave some of the heroin that he already had to Craig Handy; and/or (8) Craig Handy used his own heroin.

The movant also makes several pro se legal arguments. Namely, the movant asserts the following: (1) the grand jury never possessed the right understanding of the law as it relates to the facts of his case; (2) he did not have adequate notice of the elements of the offense; (3) the evidence does not show that only heroin was in Craig Handy's body and many types of drugs will show up in urine as morphine; (4) he was convicted of an act which the law does not make unlawful; (5) relief is warranted because the trial error cannot survive scrutiny under the *Brecht* standard; (6) the court can consider whether a

10

fundamental miscarriage of justice occurred when the jury found that Craig Handy died as a result of using the heroin that the movant distributed; (7) the jury could not find but-for causation because the government did not prove that there was a significant amount of morphine in Craig Handy's blood; (8) cause to excuse his procedural default exists because his claim is so novel that its legal basis was not reasonably available to counsel; (9) prejudice exists because the jury instruction error worked to his actual and substantial disadvantage; (10) he is actually innocent because it is more likely than not that no reasonable juror would have convicted him if no constitutional error at trial occurred; (11) the court imposed an unlawful sentence because it is above the maximum authorized by statute, which is 20 years;[4] and (12) additional evidence to establish actual innocence can be provided if the trial record is not sufficient.

### 2. *The government*

The government reiterates the points that it made when resisting the movant's request to expand the scope of the evidentiary hearing. Namely, it maintains that the movant is procedurally barred from obtaining relief because (1) he did not raise *Burrage* as an issue in his initial motion to vacate, set aside or correct sentence or any amendment to such motion and (2) he neither alleges that the heroin was not a but-for cause of Craig Handy's death nor asserts any facts that would support such an allegation. The government emphasizes that merely alleging that there were intervening persons who sold

---

[4] When he previously argued that trial counsel provided ineffective assistance of counsel, the movant maintained that trial counsel repeatedly emphasized that he only faced a maximum sentence of not more than 30 years. Further, neither party asserts that the movant is actually innocent of the lesser included offense, that is, the movant did not commit the crime of distributing heroin after having previously been convicted of a felony drug offense. Therefore, the movant is subject to a statutory maximum of 30 years, not 20 years, if the additional penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) does not apply. *See* 21 U.S.C. § 841(b)(1)(C) ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years . . . .").

or gave heroin to Craig Handy is insufficient because the Supreme Court did not address intervening distributors in *Burrage* and no legal authority supports the proposition that further distribution of heroin by another person makes the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) inapplicable. The government further argues that the movant cannot overcome procedural obstacles, that is, demonstrate cause and prejudice or actual innocence, because the facts show that the heroin that the movant distributed was a but-for cause of Craig Handy's death.

*B. Analysis*

It is undisputed that the movant did not contest the validity of the jury instructions or the burden of proof regarding cause of death at the trial level or on direct appeal. As a result, the issue of *Burrage* as a basis for relief in this proceeding is procedurally defaulted unless the movant can establish either cause and actual prejudice or actual innocence. *See Bousley*, 523 U.S. at 621-22; *Frady*, 456 U.S. at 164-65; *Johnson*, 278 F.3d at 844; *Swedzinski*, 160 F.3d at 501. The movant is unable to establish (1) that the erroneous jury instruction "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions," *Frady*, 456 U.S. at 170 (formatting omitted), and (2) that a properly instructed jury would have acquitted him of violating 21 U.S.C. § 841(b)(1)(C), *id*. at 172. Similarly, the movant is unable to establish that a fundamental miscarriage of justice occurred.

The movant contends that the heroin he distributed was not sufficient to cause Craig Handy's death because an intervening person—Nick Howe, Michelle Eash or Wes Gridley—gave or sold Craig Handy the heroin that led to his death. But, *Burrage* does not require that the heroin that the movant distributed be the only reason for Craig Handy's death. The pertinent inquiry is not whether the movant's distribution of heroin was the sole cause of Craig Handy's death, but rather whether it was a but-for cause. *See Burrage*, 134 S. Ct. at 892 ("[W]here use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant

cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury."). Other factors, such as individuals or alcohol, could have contributed to Craig Handy's death so long as Craig Handy's use of heroin that the movant supplied was a but-for cause of Craig Handy's death. For example,

> [W]here A shoots B, who is hit and dies, [it is clear] that A [actually] caused B's death, since but for A's conduct B would not have died. The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so—if, so to speak, it was the straw that broke the camel's back. Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived.

*Id*. at 888 (third alteration in original) (citations and quotation marks omitted). Like the Supreme Court in *Burrage*, the court must consider whether the evidence shows that the statutorily prohibited outcome, that is, Craig Handy's death, would not have occurred in the absence of the factor at issue, that is, the movant's distribution of heroin.

The evidence indicates the following:

> Nick Howe and Michelle Eash were heroin users. They had been introduced to the movant by another heroin dealer. They knew the movant only as "Youngblood" and as someone who drove an older, full-size van. In their address book, they listed the movant's phone number under "Youngblood."
>
> Another heroin user had been introduced to the movant by the same heroin dealer that introduced Nick Howe and Michelle Eash to the movant. She identified the movant as someone who drove a full-size van. She called the movant and tried to buy heroin from the movant but never succeeded.
>
> Nick Howe and Michelle Eash bought heroin from the movant approximately three times a week during the last six to nine months of 2004. In the late afternoon of December 31, 2004, Nick Howe and Michelle Eash called the movant to buy

13

heroin. They met the movant on the Southeast side of Cedar Rapids, and he sold them heroin.

After purchasing heroin from the movant, Nick Howe and Michelle Eash drove to Ottumwa, Iowa to meet Wes Gridley. The three of them then picked up Craig Handy from a bar. Craig Handy was intoxicated. At different times on December 31, 2004, Nick Howe, Michelle Eash, Wes Gridley and Craig Handy used the heroin that the movant sold to Nick Howe and Michelle Eash. Shortly after Craig Handy used the heroin, he had trouble breathing, became unresponsive and eventually died of acute alcohol and drug intoxication.

Dr. Julia Goodin, a forensic pathologist and the medical examiner for the State of Iowa, performed an autopsy on Craig Handy. When doing so, Dr. Goodin did not find any external traumatic injuries indicating a cause of death. She, however, found a fresh puncture wound in Craig Handy's left arm. And, when examining Craig Handy's internal organs, she found that Craig Handy's lungs were congested and contained lots of fluid. Such a finding is often times associated with overdoes cases, especially if opiates are involved, and congestive heart failure cases. When a person's lungs fill with fluid, it becomes more difficult to breathe and causes other parts of the body to become stressed. She did not find anything about Craig Handy's brain, heart or other internal organs that indicated a cause of death.

Dr. Goodin had toxicology reports generated. Those indicated that Craig Handy's urine tested positive for opiates and morphine, which is the substance that is present when the body metabolizes heroin. His blood, however, did not test positive for opiates and morphine, which indicated that Craig Handy's body metabolized the heroin quickly, that is, removed the morphine from his blood and put it in his urine. The toxicology reports also indicated that Craig Handy tested positive for ethanol at .16 percent, which means he was intoxicated at a level of twice the legal limit to drive and had some inhibition—could be losing some of his judgment and could be slow to react. The level of ethanol in Craig Handy's bloodstream by itself was not at a level that is associated with fatality.

> Dr. Goodin opined that Craig Handy's blood metabolized the heroin and morphine very rapidly and it caused deleterious effects on his lungs and his heart and ultimately caused his death. She stated that heroin and alcohol both cause central nervous system depression in that they both decrease the respiratory effort. They work synergistically together to cause more respiratory depression. Dr. Goodin listed Craig Handy's cause of death as acute drug (morphine) and ethanol intoxication. She did not doubt at all that Craig Handy's use of heroin, which was converted to morphine, contributed to his death.
>
> Dr. Goodin also opined that laying Craig Handy on his back after he injected heroin did not contribute to his death and that it was possible that Craig Handy could have died if he did not drink any alcohol, that is, the morphine alone could have caused his death.

The record indicates that a number of causes operated concurrently to cause Craig Handy to die. It also indicates that Craig Handy's death would not have occurred but-for the movant's distribution of heroin to Nick Howe and Michelle Eash. Substantial evidence establishes that, but-for the movant's distribution of heroin to Nick Howe and Michelle Eash on December 31, 2004, Craig Handy would not have died. The movant introduced the heroin into the stream of commerce, and Nick Howe, Michelle Eash and Wes Gridley made it possible for Craig Handy to use the heroin that the movant distributed. Consequently, all of them were responsible for causing Craig Handy's death.

The court must consider the evidence presented, not what might of occurred or baseless conjecture. The movant merely speculates that: (1) Nick Howe and Michelle Eash could have obtained heroin from someone other than the movant; (2) Nick Howe, Michelle Eash and Wes Gridley could have used all of the heroin that the movant distributed before they met Craig Handy; (3) Wes Gridley could have had his own heroin; (4) Craig Handy could have had his own heroin; (5) Wes Gridley could have never shared the heroin that Nick Howe and Michelle Eash gave him; (6) Wes Gridley could have given some of the

15

heroin that he already had to Craig Handy; and (7) Wes Gridley could have used his own heroin.[5] But, no evidence supports the movant's suppositions.

The jury determined that Nick Howe and Michelle Eash obtained heroin from the movant. There is no other evidence for the source of the heroin that Nick Howe, Michelle Eash, Wes Gridley and Craig Handy used. Nick Howe and Michelle Eash brought the heroin down to Ottumwa, and Wes Gridley asked Nick Howe and Michelle Eash for some of their heroin. They had less than a gram of heroin and did not want to share it with Wes Gridley. Nevertheless, Nick Howe and Michelle Eash gave some heroin to Wes Gridley, and he in turn gave some heroin to Craig Handy. Further, there is no evidence that Craig Handy used heroin in the recent past or had his own heroin. The evidence indicates that he previously used heroin a long time ago when he was in Texas and wanted to try it again because Wes Gridley had obtained some from Nick Howe and Michelle Eash.

The jury also determined that Craig Handy died as a result of using the heroin that the movant distributed. The movant adduced no evidence that could support even an inference that some drug other than the heroin that the movant distributed caused Craig Handy to die.[6] All of the evidence indicates that Craig Handy died shortly after using the heroin that the movant distributed. Moreover, the movant mischaracterizes the medical evidence. Dr. Goodin did not testify that Craig Handy's use of heroin could have caused his death. Rather, she testified that Craig Handy's use of heroin did cause his death. There is no evidence of a cause of death other than heroin. All of the evidence indicates that a combination of alcohol and heroin caused Craig Handy's lungs and body to shut

---

[5] The court notes that the movant previously took the position that he would have pleaded guilty if trial counsel informed him that the court would impose a mandatory life sentence as a result of being convicted by the jury. Such position contradicts his current assertions.

[6] The record indicates that Craig Handy used marijuana on December 31, 2004, but the movant does not argue such use had any impact on Craig Handy.

16

down and that the combination of factors without the heroin would not have caused Craig Handy to die, that is, he would have lived absent his use of the heroin that the movant distributed. Stated differently, it is clear that the incremental effect of the heroin on Craig Handy's body caused Craig Handy to die.

Because the record contains no evidence that undermines the conclusion that the movant's distribution of heroin was a but-for cause of Craig Handy's death or that Craig Handy would have lived but for his use of heroin, the movant is unable to establish that the erroneous jury instruction had any impact on the jury or that he is actually innocent of the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C). In light of all the evidence, the court cannot conclude that the complained-of error infected the movant's "entire trial with error of constitutional dimensions," *Frady*, 456 U.S. at 170, that there is a substantial likelihood that a properly instructed jury would have acquitted him of violating 21 U.S.C. § 841(b)(1)(C), *id*. at 172, or that "it is more likely than not that no reasonable juror would have convicted him," *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Hence, the movant is precluded from obtaining relief based on his procedurally defaulted *Burrage* claim.

Further, for the instruction error to be harmless, it must appear beyond a reasonable doubt that the element complained of "was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Neder v. United States*, 527 U.S. 1, 17 (1999). In other words, an instructional error cannot be considered harmless if "the record contains evidence that could rationally lead to a contrary finding with respect to the [element in error]." *Id*. at 19. A thorough examination of the entire record is required, and the court cannot find the error to be harmless if it "cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error." *Id*.

Here, the error is harmless only if it appears beyond a reasonable doubt that the jury would have found the movant's distribution of heroin to be the but-for cause of Craig

Handy's death. Although a review of the entire record demonstrates several factors caused Craig Handy to die, the requisite but-for causal link between the heroin and Craig Handy's death is supported beyond a reasonable doubt. In light of the uncontradicted testimony by Nick Howe, Michelle Eash and Wes Gridley and the corroborating medical testimony by Dr. Goodin, the court is unable to conclude that a rational jury would have found that the heroin that the movant distributed was not the but-for cause of Craig Handy's death. *See Neder*, 527 U.S. at 19 (emphasizing that a court must find that the element was contested and the evidence is sufficient to support a contrary finding before concluding that the error was not harmless). All of the evidence indicates that Craig Handy would have lived if he did not use the heroin that the movant distributed. If properly instructed, it is clear beyond a reasonable doubt that the jury would have determined that the movant's illegal distribution of heroin was the but-for cause of Craig Handy's death. Because the jury's verdict would have been the same if the jury had been properly instructed, the movant's conviction remains valid.[7] Therefore, any error that occurred in this case is harmless.

In sum, the alleged error based on *Burrage* does not warrant relief under 28 U.S.C. § 2255. The court again stands by its previous decision denying the movant's motion to vacate, set aside or correct sentence. The clerk's office shall be directed to enter judgment in favor of the government.

### C. *Certificate of Appealability*

In a 28 U.S.C. § 2255 proceeding before a district judge, the final order is subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability

---

[7] The same result is reached under the less onerous *Brecht* standard. Indeed, in light of the record, it can be said with absolute certainty that the trial error had no effect on the jury's decision. *See Clay*, 720 F.3d at 1027.

under 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

On two prior occasions, the court found that the movant failed to make the requisite "substantial showing" with respect to the claims that he raised in his 28 U.S.C. § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). The Eighth Circuit Court of Appeals, however, determined that the movant did present a question of substance for appellate review. Given the history of this case, a certificate of appealability shall be

granted. The movant may pursue further review of his *Burrage* claim at the Eighth Circuit Court of Appeals.

**IT IS THEREFORE ORDERED**:

1) The court's prior decision denying the movant's 28 U.S.C. § 2255 motion stands.

2) The clerk's office is directed to enter judgment in favor of the government.

3) A certificate of appealability is granted so that the movant may pursue further review of his *Burrage* claim at the Eighth Circuit Court of Appeals.

**DATED** this 28th day of July, 2016.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA